**TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant,**

**v.**

**Johnnie A. JANAK, Appellee.**

**No. 14163.**

Court of Civil Appeals of Texas.

San Antonio.

Nov. 20, 1963.

Rehearing Denied Dec. 18, 1963.

**745**

Putman & Putman, San Antonio, for appellee.

BARROW, Justice.

This suit was brought by Johnnie A. Janak to recover workmen's compensation benefits from Texas Employers' Insurance Association, by reason of injuries sustained in an automobile collision on a public highway on October 22, 1959. The jury found that Janak was in the course of his employment for Field Drilling Company at the time of the collision and that his injuries resulted in permanent partial incapacity. Judgment was entered on this verdict and the Association has perfected this appeal.

The Association asserts that there is no evidence to support the jury finding that Janak was in the course of his employment, or, in the alternative, that the finding is so contrary to the overwhelming preponderance of the evidence as to be manifestly wrong and unjust. There is very little conflict in the evidence on this issue. It is our duty however to view the evidence and the reasonable inferences therefrom most favorably in support of the jury's findings. Jecker v. Western Alliance Ins. Co., Tex., 369 S.W.2d 776.

Janak was employed by the Field Drilling Company about two months before the collision, to work as a roughneck on a drilling rig which was located near Coy City in Karnes County. Janak lived in Yorktown, which was about fifty miles from the rig location. Transportation was not furnished by his employer, and Janak went to and from work each day as a member of a car pool. The other four members of his shift, including T. J. Nesloney, the driller in charge of this shift, were members of this car pool. Each member of the shift drove his own car every fifth day and paid the necessary car expenses for that day. The employees were paid wages only for the time spent at the rig and were not reimbursed in any way for their transportation expense.

Groce & Hebdon, Charles L. Smith, San Antonio, for appellant.

Drinking water was needed for the employees, and since none was available at the drilling site it was customary for Janak's crew to fill cans, furnished by his employer, with water and ice each morning on their way to the rig. The employer acquiesced in this custom. The ice and water was obtained at an ice house in Runge, which was on the direct route from Yorktown to Coy City. It is customary with most drilling companies to pay for the ice used in the drinking water. Field Drilling Company did not do so, but there is evidence that Nesloney's immediate supervisor advised that he would give overtime compensation during the "rigging up" time to repay the employees for purchasing the ice. Nesloney paid for the ice the first week and thereafter the employee who furnished transportation for the car pool on that particular day would pay for the ice. No one was given overtime by Field Drilling Company, as the accident occurred before the "rigging up" time.

Two days before the collision the rig was moved to a drilling site near Ecleto, which is located between Runge and Gillett. The most direct route from Yorktown to the drilling site would be through Gillett. On October 22, 1959, Pete Draplia drove his car for the car pool and Janak was a passenger in the car at the time of the collision. They were not sure that an ice house was open in Gillett, so they went by the ice house in Runge, which was about six to eight miles further to the drilling site than through Gillett. After securing the ice and water, Draplia's car was proceeding from Runge to Ecleto when the collision occurred, which resulted in the injuries to Janak. They had not reached the intersection with the route from Yorktown via Gillett at the time of the collision.

Since Janak was injured on a public highway enroute to his place of employment, the question of whether he was in the course of his employment is controlled by Sec. 1 and Sec. 1b of Art. 8309, Vernon's Ann.Civ.Stats. In 1957 the Legislature added Sec. 1b to the definition of the term "injury sustained in the course of employment," by providing as follows:

"Sec. 1b. Unless transportation is furnished as a part of the contract of employment or is paid for by the employer, or unless the means of such transportation are under the control of the employer, or unless the employee is directed in his employment to proceed from one place to another place, such transportation shall not be the basis for a claim that an injury occurring during the course of such transportation is sustained in the course of employment. Travel by an employee in the furtherance of the affairs or business of his employer shall not be the basis for a claim that an injury occurring during the course of such travel is sustained in the course of employment, if said travel is also in furtherance of personal or private affairs of the employee, unless the trip to the place of occurrence of said injury would have been made even had there been no personal or private affairs of the employee to be furthered by said trip, and unless said trip would not have been made had there been no affairs or business of the employer to be furthered by said trip."

The Supreme Court has recognized that the Legislature in enacting Sec. 1b did not enlarge the definition of course of employment found in Sec. 1 of Art. 8309, but rather circumscribed the probative effect that might be given to the means of transportation or the purpose of the journey. Jecker v. Western Alliance Ins. Co., supra; Texas General Indemnity Co. v. Bottom, Tex., 365 S.W.2d 350. It is still necessary for the claimant to show that the injury is of the kind and character that had to do with and originated in the work, business, trade or profession of his employer and was received while he was engaged in or about the furtherance of the affairs or business of the employer. Texas General Indemnity Co. v. Bottom, supra; Maryland Casualty Co. v. Thomas, Tex.Civ.App., 367 S.W.2d 407, wr. ref.

It is undisputed that the transportation involved herein was not furnished as a part of his contract of employment; was not paid for by his employer, and was not under the control of his employer. Janak asserts that in deviating off the direct route to his place of employment in order to secure the ice and water needed on the job, he was on a special mission for his employer.

The general rule, recognized by the above authorities, is that an injury occurring in the use of public streets or public highways in going to and returning from the place of employment is non-compensable. One of the recognized exceptions to this rule is that an employee is in the course of his employment when he undertakes a special mission under the direction of his employer or performs a service in furtherance of his employer's business with the express or implied approval of his employer. Jecker v. Western Alliance Ins. Co., supra; American General Ins. Co. v. Coleman, 157 Tex. 377, 303 S.W.2d 370; Whisenant v. Fidelity & Cas. Co. of N. Y., Tex.Civ.App., 354 S.W.2d 683. This exception does not apply to Janak at the time of the accident, as he was only a passenger in the automobile operated by Draplia.

An almost identical factual situation was presented in Travelers Insurance Co. v. Forson, 268 S.W.2d 219, and the Fort Worth Court of Civil Appeals held that if the transportation of the water to the drilling site could be termed a special mission for the employer, it was a special mission performed by the driver of the car bringing the water and not a special mission performed by a passenger member of the car pool. The Court said:

"The employer certainly could not be said to have any purpose to be served in the transportation of the deceased (Forson), and since his presence was not required and his services not reasonably necessary to fill the can with water and place it in the automobile trunk, there was no causal connection between any work which might be said to have been performed at Henrietta prior to the time of the trip to the well site and the fatal injuries which were sustained. * * * The risk or hazard to which the deceased was exposed and which did result in his death was that of the public highway over which he traveled on his way to work and was one to which all members of the public were subject."

The Court held that this risk or hazard was not contemplated by Forson or his employer in the contract of employment of Forson. Smith v. Texas Employers' Ins. Ass'n., 129 Tex. 573, 105 S.W.2d 192.

Janak urges that the rule in the Forson case has no application in that Forson's accident occurred on the direct route to the drilling site, and Janak was injured on a deviation from the direct route. We can see no basis for such a distinction. Janak's sole purpose in being in the car at this time was incident to his transportation to work as a member of Draplia's car pool. The deviation was an incident of such transportation and not by reason of any mission that Janak was performing for his employer. Travelers Ins. Co. v. Forson, supra; Bozant v. Federal Underwriters Exchange, Tex.Civ. App., 159 S.W.2d 973.

It is therefore our opinion that Janak was not in the course of his employment at the time of the collision, and the trial court erroneously overruled the Association's motion for instructed verdict and motion for judgment non obstante veredicto. The judgment of the trial court is reversed and judgment here rendered that Janak take nothing.