**ADMIRAL INSURANCE COMPANY,**
Appellant,

v.

**William E. PALMER, Appellee.**

No. 2558cv.

Court of Appeals of Texas,
Corpus Christi.

Feb. 17, 1983.
Rehearing Denied May 5, 1983.

William A. Abernethy, Meredith & Donnell, Corpus Christi, for appellant.

Donald B. Dailey, Jr., Corpus Christi, for appellee.

Before BISSETT, YOUNG and KENNEDY, JJ.

## OPINION

BISSETT, Justice.

This is an appeal by the insurance carrier from a judgment rendered in a workers' compensation case. Following the return by the jury of favorable findings to the special issues submitted, judgment was rendered for appellee William Palmer (Palmer) against appellant Admiral Insurance Company (Admiral) in the amounts of $10,028.64 in unpaid medical expenses and in the sum of $1,575.00 for fifteen (15) weeks of unpaid accrued workman compensation benefits, together with four percent interest compounded annually to the date of entry of the judgment, and nine percent interest from that date until said judgment is paid.

Appellant attacks the judgment on the ground that Palmer was acting outside the scope of his employment at the time he was injured, and, therefore, was not eligible for workers' compensation benefits.

The following facts are undisputed and are established by the record. Palmer began working for Frank's Casing Crew (Frank's), at their Corpus Christi business site, in about February of 1979. On May 29, 1979, the date of Palmer's injury, he was employed by Frank's as a stabber and floor hand. On this date, as was the usual procedure employed by Frank's, R.J. Turnbow (Turnbow), the crew pusher, picked up Palmer and the other crew members needed for a particular assignment. Turnbow was assigned a "Chevy Suburban," owned by Frank's, and one of his responsibilities was to pick up the necessary workers for a given job, and transport them to and from a job site and then return them to their respective homes.

Crew members were paid a fluctuating hourly rate, depending upon the particular activity in which they were engaged at a given time. Different rates were paid for travel time, waiting time, extra working time, and for actually running casing. Crew members began receiving pay from the time they left the shop until the time they returned to the shop.

On the morning of May 29, 1979, Turnbow, Palmer and three other crew members departed Frank's in two company vehicles, i.e., the Suburban and a bobtail truck. The bobtail truck was used primarily for transporting equipment. On this particular date, the job site was near Rio Grande City. After their work had been completed, sometime around dusk of the same day, the crew departed the job site in the two company owned vehicles and began their return trip to Corpus Christi. The two vehicles stopped several times on the return trip, and near Robstown, Texas, the bobtail truck ran out of gasoline. At this time, Turnbow made the decision to tow the bobtail truck the remaining distance to the shop, approximately ten miles, by chaining it to the Suburban and using the Suburban to pull it on in to Frank's shop in Corpus Christi, Texas.

While towing the truck at around 10–15 miles per hour, following an argument between Turnbow and Palmer the appellee climbed out of the still moving Suburban and onto its roof. He then crawled to the back of the vehicle and sat down with his legs hanging over the back edge. No one instructed Palmer to climb on top of the Suburban. No work needed to be done on

top of the vehicle. There were no seats, equipment or hand-holds located on the roof of the Suburban. While sitting on top of the Suburban, Palmer slipped and fell between the two vehicles. He was subsequently run over by the "in-tow" bobtail truck. The injuries resulting from this event form the basis of the lawsuit.

As noted, Palmer's actions of leaving his seat in the Suburban and crawling to the back of the moving vehicle followed a verbal altercation between himself and Turnbow. Turnbow was the driver of the Suburban at the time of the injury. The injury occurred prior to the time the crew members had returned to Frank's for the day, and while they were still being paid for travel time.

The only issue before this Court is whether Palmer's voluntary actions took him outside the scope of his employment, and therefore beyond relief provided for by the Workers' Compensation Act.

"An essential element that an employee must prove in order to recover workers' compensation benefits is that the injury was sustained in the course of employment .... As a general rule an injury sustained in the course of employment 1) must be of a kind or character originating in or having to do with the employer's work, and 2) must have occurred while engaged in the furtherance of the employer's business or affairs." *Briggs v. United States Fire Ins. Co.,* 611 S.W.2d 624, at 627 (Tex.1981).

■ "Although the general rule is that injuries sustained by a worker while traveling on the public streets or highways are not incurred in the course and scope of employment, an exception to this general rule is when the worker is traveling on the public streets or highways pursuant to express or implied conditions of his employment contract." *Meyer v. Western Fire Insurance Company,* 425 S.W.2d 628 (Tex. 1968). See, also, *Jecker v. Western Alliance Insurance Co.,* 369 S.W.2d 776 (Tex.1963). An injury incurred, while traveling on the highway, will be construed as being within the course and scope of employment, provided the employee is traveling pursuant to

either express or implied terms of his employment, and the employee would have made the trip had there been no personal or private affairs to be furthered and would not have made it had there been no business of his employer to be furthered. *Jecker* at 779; and *Meyer* at 630.

■ While the fact that an employer is furnishing transportation to an employee as part of the employment contract, when taken alone, is not sufficient to establish "course of employment," *Texas Employers' Insurance Association v. Byrd,* 540 S.W.2d 460 (Tex.Civ.App.—El Paso 1976, writ ref'd n.r.e.), several factors contribute in the case at bar which establish that Palmer was within the scope of his employment at the time he was injured.

■ First, it is clear from the record that the usual procedure employed by Frank's was for the crew pusher to pick up the crew in a company-owned vehicle. Second, the pusher would then transport the crew to the out-of-town work site and return the crew when the work was completed. Finally, each member of the crew was paid an hourly wage from the time they left Frank's until, upon completion of the job, each returned to Frank's shop.

We believe that the facts before us clearly show that Palmer was within the scope and course of his employment while returning from the work site on the day of his injury. We next address Admiral's contention that Palmer deviated from this course when he crawled out of the Suburban and on top of the roof of the still moving vehicle.

Appellant cites this Court to cases where courts have held that an employee, although initially within the course and scope of his employment, deviated from that course and thus removed himself from the protections offered by the Workers' Compensation Act. In *Fidelity & Casualty Co. of New York v. Musick,* 562 S.W.2d 38 (Tex.Civ.App.—Tyler 1978, writ ref'd n.r.e.), an employee at a company sponsored social event, left this event and went to another site where he engaged in a dangerous activ-

ity, which resulted in an injury to himself. In *Safety Casualty Co. v. Wright,* 138 Tex. 492, 160 S.W.2d 238 (Tex.1942), a pipeline employee was within the course and scope of his employment while riding a bus. Something happened to the bus which caused it to stop. The employee-claimant was injured while assisting the bus driver in making repairs to the bus. The Supreme Court held that he was not entitled to recover compensation benefits because he had voluntarily deviated from the scope of his employment. But in both of these cases, and in all other deviation cases which we have found, the employee stopped doing the act that placed him within the course and scope of his employment, and undertook some deviating second action.

In the case before us, Palmer never ceased being transported to Frank's prior to his injury. The purpose of returning Palmer to Frank's place of business was still being accomplished regardless of whether Palmer was inside or on top of the vehicle returning the crew to Frank's. Palmer did not deviate from the scope and course of his employment by his actions, which resulted in his injuries.

That Palmer was contributorily negligent in his injuries by climbing on top of the moving vehicle, we have no doubt. However, the Workers' Compensation Law protects an employee from his own negligence.

We find that there is sufficient evidence to support the jury's finding that Palmer was within the course and scope of his employment at the time of his injury.

We have considered both of appellant's points of error. They are overruled. The judgment of the trial court is AFFIRMED.